PEAVY-BYRNES LUMBER COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

PEAVY-WILSON LUMBER COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

PEAVY-MOORE LUMBER COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 15822–15824, 16354–16356, 25984–25986.
Promulgated January 18, 1932.

*S. L. Herold, Esq.,* and *John B. Files, Esq.,* for the petitioners.
*John E. Marshall, Esq.,* and *C. R. Marshall, Esq.,* for the respondent.

OPINION.

TRAMMELL: Further proceedings were had in these cases pursuant to judgment and mandate of the United States Circuit Court of Appeals for the Fifth Circuit. (51 Fed. (2d) 163.) The issues joined at the original hearing included, among others, questions of

invested capital and depletion. See 14 B. T. A. 625, where we said, at page 648:

The Peavy-Byrnes Lumber Co. claims that either it is entitled to deduct each year, as cost of timber under the Krause & Managan Lumber Co. contract, one-half of the net profits of the Peavy-Byrnes Co., or that the 2,500 shares of capital stock issued to the Krause & Managan Lumber Co., Ltd, in 1913 were worth $562,000, and represented payment for the timber contract; and that this amount should be included in invested capital and be subject to exhaustion or depletion based upon the quantity of timber included in the contract.

Upon the evidence adduced, we reached the conclusion that the Peavy-Byrnes Lumber Co. acquired the timber rights under the contract in question from the Krause & Managan Lumber Co. in 1909, for which stock was issued in July, 1913. (14 B. T. A. 631, 648, 650.) Accordingly, we held that the cash value of the timber rights in 1909 when paid in for stock should be included in invested capital, and that the basis for computing deductions for depletion was the value of the timber rights at March 1, 1913.

The United States Circuit Court of Appeals, in its opinion above cited, held that the contract referred to " did not effect an immediate sale of the timber "; that " the Board erred in failing to accept July 28, 1913, as the date for ascertaining the value of the timber received by the Peavy-Byrnes Company in exchange for its capital stock "; and remanded the cases for further proceedings not inconsistent with its opinion.

Agreeably with the mandate of the court another hearing was held, at which the parties were afforded an opportunity to present such additional evidence as they desired respecting the value of the timber at July 28, 1913, and the evidence so presented will be referred to herein.

The assets paid in for stock, with which we are here concerned, constituted tangible property, and, under the Revenue Acts of 1918 and 1921, may be included in invested capital at their actual cash value at the time when so paid in, i. e., July 28, 1913. Also, since the timber was acquired by the Peavy-Byrnes Company on July 28, 1913, which was subsequent to March 1, 1913, cost is the basis for computing depletion allowances. There is no controversy respecting the correctness of these propositions of law. It follows that the problem now presented is to find from the evidence before us the actual cash value of the timber in question as of July 28, 1913, for purposes of invested capital, and the cost thereof to the Peavy-Byrnes Company for purposes of depletion, if cost was not the same as the actual cash value.

The parties to the contract involved were dealing at arm's length, and hence evidence respecting the actual cash value of the assets exchanged for the stock may be considered in arriving at the value

of the stock. Conversely, evidence tending to establish the value of the stock may be considered in determining the value of the assets exchanged therefor. *William Ziegler, Jr.,* 1 B. T. A. 186; *Napoleon B. Burge et al.,* 4 B. T. A. 732; *Rose C. Pickering et al.,* 5 B. T. A. 670, and decisions cited. At the original hearing, these cases were presented on the theory that the value of the stock represented the value of the assets for which exchanged.

Based on the record of the first hearing, the petitioners contended that the fair market value of the 2,500 shares of stock of the Peavy-Byrnes Company which were issued to the Krause & Managan Company on July 28, 1913, was $245.50 per share, or a total market value of $613,750 as of July 28, 1913; and that the fair market value of the timber as of the same date, when the stock was issued therefor, was $613,750, which amount should be included in invested capital.

The petitioners now contend that the property exchanged for stock had a value at the basic date of $1,250,000, which amount should be included in invested capital, and that the same amount, in addition to the annual stumpage payments at the stipulated rates, also represents the cost to the Peavy-Byrnes Company of the timber acquired on July 28, 1913, which amount likewise should be the basis for computing depletion allowances.

These latter contentions are predicated upon the testimony adduced at the supplemental proceedings hereinabove referred to. At that hearing A. J. Peavy, president of the petitioning corporations, testified that in his opinion the aggregate value of the assets of the Peavy-Byrnes Company at July 28, 1913, was about $3,000,000 and that the timber at that date was worth $10 per thousand feet. Rudolph Krause, president of the Krause & Managan Company, testified that in his opinion the assets of the Peavy-Byrnes Company at July 28, 1913, were worth $2,500,000 to $3,000,000, and that the timber at said date was worth between $10 and $12 per thousand feet.

On the basis of this testimony, the petitioners argue that the stock of the corporation had a fair value of $500 per share at July 28, 1913, or a total value of $1,250,000 for the 2,500 shares exchanged on said date, as the petitioners claim, for a one-half interest in the aggregate assets, including the timber and half of the future profits, of the Peavy-Byrnes Company.

The Circuit Court of Appeals declined to accept the theory of the petitioners in respect of the assets exchanged for the stock, saying:

Prior to July 28, 1913, the Peavy-Byrnes company had only the right to cut the timber, * * * The Peavy-Byrnes company did not become the owner of the timber until July 28, 1913 when it paid for it in stock. The Krause & Managan company upon the exercise of its option to take the stock surrendered its interest in the contract, and thereafter became only a stock-

holder. It therefore cannot be held, as argued on behalf of the Peavy-Byrnes company and the other two petitioning corporations, that the stock was issued to the Krause & Managan company only for the purpose of evidencing its right to continue to receive half of the future net profits.

The present contention of the petitioners, and the testimony offered in support thereof, that the stock of the Peavy-Byrnes Company had a value of $500 per share at July 28, 1913, a value in excess of twice the amount originally claimed, is in sharp conflict with the other evidence of record bearing on the question of value of the stock and of the assets.

Peavy testified at the original hearing that he purchased 45 shares of this stock from his brother-in-law, Byrnes, on November 21, 1913, at $225 per share; that the purchase was a business transaction, and that he then considered the stock was worth what he paid for it.

The petitioners' witness Johnson, at the same hearing, testified that in 1913, at about the basic date, or shortly prior thereto, he sold stock in the Peavy-Byrnes Company for approximately $230 per share. He further testified that, considering the factors then known affecting the value of the stock, it had in his opinion a fair value at July 28, 1913, of $266 per share. This witness was a banker of many years experience, the president of two banks, which were the principal depositories of all the Peavy companies, and one of which banks assisted in their original financing. He was also a stockholder of the Peavy-Byrnes Company and about July, 1913, was familiar with its financial condition.

Taking the value of $266 per share as the fair value of the stock at July 28, 1913, which is the maximum value as of that date established by the testimony of the witness Johnson, we find the total value of the 2,500 shares of stock exchanged on that date for the Krause & Managan property to be $665,000. This entire amount of stock, however, was not issued for the timber standing uncut on that date. A portion only of the stock issued at that time was in payment of the uncut timber. A portion of the stock so issued must be allocated to the timber which was cut between 1909 and July 28, 1913, since we find no provision in the contract to justify the conclusion that the Krause & Managan Company intended to donate to the Peavy-Byrnes Company, one-half of the profits accumulated during the said period. Nor can the stumpage provisions of the contract ($4 per thousand feet and the conditional bonuses) be considered as the full compensation intended to be paid by the Peavy-Byrnes Company to the Krause & Managan Company for the timber cut prior to 1913. The contract did not provide one rate of compensation to be paid by the Peavy-Byrnes Company for the right to cut the timber prior to 1913 or the date when the profits had returned to that company the cost of its plant, and a different consideration for

the sale of the remaining timber on that date to said company. On the contrary, only one basis of compensation was provided in the contract, and it applied alike to the timber paid in for stock in July, 1913, and the right to cut the timber prior thereto.

When the cut began in 1909 the timber reserve was 206,140,227 feet and up to July 28, 1913, there had been cut 52,124,702 feet, leaving 154,015,525 feet uncut on said date. Allocating the 2,500 shares of stock issued in 1913 in part to the timber that remained uncut on July 28, 1913, and in part to the right to cut the timber prior thereto, basing such allocation on the proportion of timber cut prior to the basic date and that remaining uncut on said date, and valuing the stock at $266 per share, we find that the value of the stock issued in payment of the timber standing at July 28, 1913, was $497,135.92. On the basis indicated, said amount represents the fair value of the stock issued for the timber on the date stated.

Bearing in mind the valuation of the stock arrived at above, we will next consider the evidence relating to the value of the property exchanged therefor. At the original hearing, the petitioners offered no direct evidence as to the value of the timber at July 28, 1913, when exchanged for stock, but the following stipulation relating thereto was made by the parties:

It is hereby stipulated by and between the petitioners and the respondent by their respective Attorneys of record, that the following facts are true and that the Board may incorporate the same into its findings of fact, subject to the right of either party to introduce evidence as the basis of further findings of fact, except as to paragraph 9 hereof:

\*         \*         \*         \*         \*         \*         \*

9. That if the witnesses for the Government were present they would qualify as experts as to the fair market value of timber and testify that the fair market value of the timber covered by the agreements between Peavy Byrnes Lumber Company and Krause & Managan Lumber Company, introduced before the Board, had a fair market value of $4 per M ft. log scale as of Nov. 20, 1909; that the said timber remaining uncut on March 1, 1913 had a fair market value of $5 per M ft. log scale, and that the timber remaining uncut on July 28, 1913 had a fair market value of $6 per M feet log scale.

While paragraph 9 of the foregoing stipulation recites in substance what, it was agreed, the Government's witnesses would have testified to, if present, the fact that the parties reserved the right to introduce further evidence except as to the subject matter of paragraph 9, would seem to be tantamount to stipulating that the values fixed by the Government's witnesses were correct, and that no further evidence would be offered thereon by either party. In any event, whatever may be the precise effect of the stipulation in that regard, we are unable, in the light of the circumstances disclosed, to accept the later conflicting testimony of the witnesses Peavy and

Krause as establishing a valuation of the timber in excess of the stipulation.

At the stipulated value of $6 per thousand feet, the 154,015,525 feet of timber standing at the basic date had a total unencumbered value of $924,093.15, from which we must deduct the then present value of the $4 per thousand feet stumpage which was to be paid as the timber was cut. Using for this purpose the same factors set out in detail in our prior opinion, we find the then present value of the $4 payments to be $377,277.61. This amount subtracted from the unencumbered value of $924,093.15 leaves $546,815.54 as the value of the timber paid in for stock on July 28, 1913. That amount exceeds the value of the stock, as above computed, to the extent of $49,679.62, but in computing the value of the timber, we have not taken into consideration the conditional stumpage bonuses of 25 cents and 25 per cent. Giving effect to those elements of the consideration paid for the timber, it is at once apparent that substantially the same result is reached on the basis of a stock valuation of $266 per share as on the basis of a timber valuation of $6 per thousand feet.

Considering all the evidence in the record before us, it is our opinion that the property paid in for stock on July 28, 1913, had an actual cash value of $497,135.92 for purposes of computing invested capital, and since the stock issued therefor had substantially the same value, this amount represents the cost of the property to the Peavy-Byrnes Lumber Company, and is the proper basis for computing the depletion deductions. The amounts paid in 1919, 1920 and 1921 to the Krause & Managan Lumber Company as stumpage bonuses under paragraph 13 of the contract will be treated as additional cost of the timber for the respective years in which paid. The deficiencies will be recomputed accordingly.

*Judgments will be entered under Rule 50.*